**In re TOMLINSON INTERESTS, INC., Tomlinson Geophysical, Inc., Tomlinson Prospect Co., Tomlinson Exploration, Inc., Tomlinson Petroleum, Inc., and Republic Refining Co., Inc., Debtors.**

**Bankruptcy Nos. 84–03173–H2–4, 84–03182–H2–4, 84–03183–H2–4, 84–03189–H2–4, 84–05312–H3–4 and 84–03188–H1–4.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 12, 1991.

Francis P. Dicello Hazel & Thomas, Washington, D.C., Daniel O. Goforth, Randy W. Williams Goforth & Lewis, Michael P. Kessler, Doris A. Beutel Weil, Gotshal & Manges, Gail Jamrok, Akin, Gump, Strauss, Hauer & Feld, (Energy Minerals), Ed Cotham, Houston, Tex.

Wesley B. Huisinga U.S. Trustee, Houston, Tex.

James L. Snyder, U.S. Dept. of Justice, Fresno, Cal.

Roger Yokubaitis Keck, Mahin & Cate, Rhett G. Campbell, Morris & Campbell, W. Steve Smith Woodard, Hall & Primm, Joanne M. Vorpahl, Porter & Clements, Houston, Tex., Gary J. Knostman Fulton Beach, Tex., William Sudela Crady, Jewett & McCulley, Prentis Tomlinson c/o TexStar North America, Inc. John A. Barrett Fulbright & Jaworski, Houston, Tex., David B. Anderson Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala.

OPINION REGARDING MOTIONS TO CONVERT THE ABOVE CASES TO ONES UNDER CHAPTER 11 AND FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

RANDOLPH F. WHELESS, Jr., Chief Judge.

On January 15, 1990, five and one-half years after the above cases were filed as chapter 7 cases, Halliburton Company and other creditors filed a motion to convert the above cases to ones under chapter 11 and to appoint Gary Knostman (the chapter 7 Trustee) as chapter 11 Trustee. The chapter 7 Trustee responded. He argued that before conversion was ordered a clear showing should be made that such conversion is (at the time of conversion) in the best interest of the estate and would expedite resolution of remaining issues.

In addition, there were substantial objections and issues to the conversion raised by THE BANK GROUP, including the question of standing of the moving creditors to request conversion of the Republic Refining Company ("RRC") case. Other creditors also urged that the cases not be converted at that point.

At this point, now that the settlement with THE BANK GROUP has closed, these issues now appear to be moot. However, prior to April 26, 1991, an appeal of any order of conversion of RRC could have caused substantial additional delay, expense, and uncertainty to this proceeding and of any Plan of Arrangement confirmed before any such appeal had concluded satisfactorily.

On May 17, 1990, there was held a hearing in this Court on the Halliburton motions. At the conclusion of the hearing, this Court considered that it was likely that the cases should be converted to chapter 11 at some point but that the timing of the such conversion would have to be further considered by the Court so as to be consistent with the best interest of the estate as a whole. The matter has been kept in that posture since that time in order that the Court be satisfied that such a conversion would not be disruptive to the management of the company or to critical ongoing disputes with Bonnet Resources Corp. and the banks which it represented ("THE BANK GROUP") and with Transcontinental Gas Pipeline Company, Inc. ("TRANSCO"). This Court determined that it was important to resolve those disputes prior to any conversion of these cases, for several reasons. At a minimum, conversion in May, 1990 would have resulted in an additional layer of administrative expenses—for professionals of a creditors committee—in connection with these disputes.

At one point, when it appeared that settlement negotiations with THE BANK GROUP and also with TRANSCO appeared to be bogged down, the Court considered that conversion of the cases at that point might enhance the effort at an agreeable resolution of those disputes, due to the intervention of a creditors committee, but certain objections of THE BANK GROUP caused the Court to reconsider, as it then became apparent that further delay and confusion might result instead. The Court then determined to hold the issue of conversion in an "under advisement" posture rather than deny it without prejudice to re-urging it after resolution of the issues referred to above.

Those disputes have now been resolved by compromise agreements authorized on or about April 15, 1991. Those compromises were concluded or put into effect on April 26, 1991. It is now in the best interest of these estates that the cases be converted to ones under chapter 11.

In the meantime, on April 17, 1991, the acting United States Trustee for Region 7

also moved the Court for an order converting these cases to ones under chapter 11 and for the appointment of a chapter 11 trustee. No hearing was previously held on these motions since the Court already had "under advice" the motion of the creditors and had already determined to convert to chapter 11, as noted above. However, it had not determined the exact date when the conversion should take place.

These cases are the most unusual I have ever been involved in. On June 4, 1984, Tomlinson Interests, Inc. ("TII") and other subsidiaries of Tomlinson Interests, Inc., including Republic Refining Co. ("RRC"), filed these cases as chapter 7 cases (except Tomlinson Petroleum, Inc. in 84–05312, which came later). This event, of course, is not what has made the cases unique. That they are still pending as *operating* chapter 7 cases is only *part* of what has made these cases different from any others. Among other things, TII has a substantial interest in a sour gas field (the Johns Field) in Rankin County, Mississippi. RRC was managing general partner of a limited partnership owning the gas processing plant which processed the gas from the Johns Field. The interest of Republic Refining Co. in the limited partnership was a substantial (the majority) interest. Neither asset, the field or the plant, had substantial value without the other. It appeared necessary to operate the field in order to prevent the possible loss of leases and loss of existing wells due to physical deterioration and damage resulting in inactivity. In addition, without operating the field, the plant had no value and it too would have suffered significant damage from inoperation, as this Court understood it. Therefore, there appeared to be no acceptable alternative but to authorize the chapter 7 Trustee (selected at random by the Clerk's office) to operate the business of these Debtors. The luck of the draw (of the Trustee) turned out to be a fortuitous one.

At the time of the appointment of the chapter 7 Trustee in these jointly administered cases (Mr. Gary Knostman), the plant and field had significant problems, both legal and physical. It was impossible to sell the assets at that time, due to these twin complications. Further, there appeared to be little or no hope for any recovery by unsecured creditors. MBANK, later BANK ONE, now Bonnet Resources, represented the group of banks (THE BANK GROUP) holding substantial loans of TII (and/or the Tomlinson Group) secured by TII's interest in the field. There was also a significant ($50 million) debt on the plant. At a later time, if not from inception, THE BANK GROUP was the only creditor of RRC, a major source of income to the Debtor Group. THE BANK GROUP's claim exceeded $100,000,000.00 (although this amount was in issue). At filing, prospects for the unsecured creditors group in the TII et al cases could not have been at a lower ebb.

During the course of these chapter 7 proceedings there have been disputes with an individual claimant and the State of Mississippi over the title to the Johns Field (a substantial portion thereof), the drilling of an expensive well with non-assignable insurance benefits that were not themselves available for creditors (directly), a blowout of a gas well, disputes over insurance coverage relating to the blowout, disputes with partners in the field and the plant, a dispute with royalty owners over royalties, issues regarding the plant processing fee, and a dispute with TRANSCO over the "take or pay" contract. The significance of this latter dispute is that TRANSCO buys the gas from the processing plant. The "take or pay" contract provided for a price substantially higher than market price, at material times. To say the least, it was difficult, if not impossible in a practical sense, to sell either the Johns Field or the plant without having a firm agreement on the price to be paid for the gas by TRANSCO or any other buyer.

Another major dispute was the Trustee's action to substantively consolidate the TII subsidiaries [including RRC but excluding Tomlinson Petroleum, Inc. ("TPI")] into TII. In addition, there was and is an ongoing dispute over the claim of the Department of Energy ("DOE") against TII. This claim is for $130,000,000.00, approximately.

The claim arises from the crude oil trading activities of TPI.

Many of these problems have served to inhibit a sale of the TII et al assets and have extended this proceeding far beyond the norm. However, in this Court's opinion, what has been done by the Trustee has been necessary and effective and in the overall best interest of creditors, including both secured and unsecured creditors. All significant actions of Trustee were undertaken only after notice to the unsecured creditor group (and other interested parties) who are sophisticated parties who are well represented by knowledgeable and effective counsel.

The Trustee's operation of these Debtors' business has been in the best interest of these estates and was necessary to and consistent with readying the assets of these Debtors for orderly liquidation under chapter 7 or utilized for purposes of a plan of arrangement in a chapter 11. Any liquidation of the assets of these Debtors prior to this time would have not been in the best interest of these estates, and, in this Court's opinion, no Plan of Arrangement (even if confirmed) could be effectively implemented prior to the resolution of the substantive consolidation issues with THE BANK GROUP. In addition, no effective projection of future income could be made (in order to value the assets for sale) until the "take or pay" dispute with TRANSCO was resolved.

Despite the odds and the problems that have confronted the Trustee, both legal and operational, the Trustee has turned this case from one without realistic hope of recovery for unsecured creditors into one where projections indicate upwards of $30,000,000.00 in recovery for unsecured creditors. The secured debt on the plant has or will be paid and THE BANK GROUP has received a substantial recovery out of the April 26, 1991 settlement.

Mr. Gary Knostman is one of the best chapter 7 trustees in the Southern District of Texas. He has done an exemplary job in managing the Debtors and their assets in these cases. It is doubtful that any other trustee would have had the patience and fortitude to have done the job that he has done in this case. He is to be congratulated for the persistent effort he has made; all in addition to his success on behalf of both secured and unsecured creditors. It is that persistence that has caused the assets of these Debtors to have the current and future benefit for the creditors.

Considering the problems that have confronted the Trustee in these cases, this has been the singularly most successful bankruptcy case that this judge has ever been associated with in the nine years he has served on this bench and including the twenty one years of practice in this field of law prior thereto. This is true taking into consideration major, complex chapter 11 and chapter 7 cases (as well as the thousands of others) handled by this Court.

It is considered by this Court to be significant that no interested party requested that the cases be converted to chapter 11 until over five and one-half years into the process.

■ Since the hearing May 17, 1990, it has been the intention of this Court to convert these cases to ones under chapter 11 provided this could be done without disruption of the Debtor and its operations and without disruption of the disputes relating to substantive consolidation (which could have had a substantial impact on the "priority" of THE BANK GROUP's claim against RRC) and the serious issues relating to the TRANSCO "take or pay" litigation. Fortunately, these critical issues have now been resolved by agreement in a manner most favorable to the TII unsecured creditor group, in this Court's opinion. The resolution of these disputes concluded April 26, 1991, according to this Court's understanding. However, at that date there was then and there set for trial the Trustee's objection to the Department of Energy's proof of claim in the TII case. This matter had previously (for months) been set for trial for 9 a.m. May 20, 1991. This trial date had been selected prior to the conclusion of the settlements with THE BANK GROUP and with TRANSCO. At that point, the Court did not want to convert these cases to chapter 11 before con-

clusion of the trial of the Trustee's objection to the proof of claim of the Department of Energy for fear that such conversion would (1) be disruptive to the trial and thus cause delay in bringing this case to a conclusion and (2) precipitate unnecessary expense to the estate.

Trial of that matter (Adversary 84–1326) concluded on May 21, 1991 at approximately 6:00 p.m.; although the Trustee and the Department of Energy have asked for time to submit post-trial memorandum and proposed findings of fact and conclusions of law. The last of these is due July 26, 1991.

As a result of the foregoing, it is the conclusion of this Court that the above named cases should be converted to ones under chapter 11 but that such conversion not be effective until August 1, 1991 (a date after the period for filing of the memorandum and proposed findings of fact in the DOE case). If the U.S. Trustee's office would work with the Court and the creditors to avoid disruption of pending litigation (including the DOE matter) during the interim period between conversion to chapter 11 and confirmation of the creditors plan of arrangement, the Court would move the conversion date up and would convert the cases effective immediately.

The Court would respectfully request the U.S. Trustee to give an affirmative signal concerning this issue, in order to accommodate the interest of the unsecured creditors who have requested that Mr. Gary Knostman be appointed chapter 11 Trustee and to avoid disruption, delay, and additional (unnecessary) expense to the cases.

## THE ISSUE OF A CHAPTER 11 TRUSTEE

■ As noted above, in connection with their motion to convert, Halliburton Co. and the other moving creditors have requested that (upon conversion to chapter 11) a chapter 11 Trustee be appointed "for cause" under 11 U.S.C. § 1104. They have also requested that Gary Knostman be appointed the chapter 11 Trustee. Also as noted above, on April 17, 1991, the U.S. Trustee filed his motion to appoint a chapter 11 trustee, as part of his motion to convert.

Also as noted above, these cases were filed as chapter 7 cases. They are not chapter 11 cases which have been converted to chapter 7. This is an important consideration. There has been no determination that the Debtors themselves are not capable of being debtors-in-possession. There has been no finding of misfeasance or malfeasance on behalf of the Debtors or their officers or shareholders or any of them.

There was no persuasive evidence offered at the hearing on the creditors motions to convince the Court that the Debtor and its management could not or should not be debtors-in-possession, except for the fact that Gary Knostman has managed these Debtors and their operations for the last seven years. The recently filed (April 17, 1991) motion of the U.S. Trustee to appoint a chapter 11 trustee merely alleges as follows: "The cases have been administered by a chapter 7 trustee for the past seven (7) years and the former management of the Debtors are unavailable. Appointment of a chapter 7 trustee would be necessary to administer these estates through the approval of a disclosure statement and confirmation of a plan of reorganization." At the hearing on this motion, held June 10, 1991, the U.S. Trustee offered no evidence of any other reason for appointing a chapter 11 trustee and rested after urging the above reason for such an appointment.

The allegation of the U.S. Trustee that former management is unavailable is incorrect. Prentis Tomlinson is a successful businessman who operates an oil company in Houston, Texas. He is the sole shareholder of TII, the parent company to the other debtors. More to the point, *existing* management is available and is well qualified.

A hearing has also now been held on the motion to appoint chapter 11 trustee filed by the U.S. Trustee. The U.S. Trustee has refused to advise this Court whether he will or will not appoint Gary Knostman as chapter 11 Trustee, although the only basis

for a chapter 11 trustee alleged and shown by the U.S. Trustee is the fact that Gary Knostman, as chapter 7 Trustee, rather than *former* (pre-petition) management, has managed the Debtors operations and these cases over the past seven years. The position of the U.S. Trustee is that this Court cannot compel him to divulge this information; notwithstanding that it affects the ruling of this Court; i.e. exactly when the conversion is to take place. The Court does not want conversion to be unnecessarily disruptive.

If the U.S. Trustee is to disrupt the existing management of these Debtors (by appointment of a third party trustee), in this Court's opinion, prior or former management is in a better position to resume control of these Debtors than a brand new individual having no previous experience in the management of these Debtors.

It should be kept in mind that the involved period here is a short period between conversion of these cases and confirmation of a Plan of Arrangement intended to be filed by and on behalf of the unsecured creditors in this case. This Court intends to shorten the time within which the Debtor has the exclusive right to file a plan of arrangement, assuming an appropriate motion to that effect is filed. The period of responsibility of a chapter 11 trustee should not last longer than from three to six months (at the longest).

As a result, there is no basis for the appointment of a chapter 11 trustee, except one. And that is to continue (and therefor not to disrupt) the current management of the Debtor's operations and of the handling of these bankruptcy cases. In other words, it is only because Gary Knostman has managed the operation of these Debtors for seven years, is there *any* basis for not turning this management back to Prentis Tomlinson, the owner of 100% of Tomlinson Interests, Inc.

For any person to be selected as chapter 11 trustee other than Gary Knostman would be disruptive to the Debtor, would create unnecessary expense, would cause loss of efficiency in professionals and in the operation of the Debtor and in the

expeditious conclusion of pending litigation vitally important to the interest of the estates. Any "new" chapter 11 trustee (one other than Mr. Knostman) would have never had the experience of full authority to manage these Debtors. At least Prentis Tomlinson has had that experience and his management would be less disruptive to the Debtor and the efficient handling of these cases than a third party. In addition, the unsecured creditors have requested that Gary Knostman be appointed chapter 11 Trustee.

Gary Knostman is an experienced and extremely capable Trustee. The Court has faith in his integrity and his ability. He is thoroughly familiar with these Debtors and their operations. He has assembled a team of outstanding professionals to manage the difficulties encountered in the John's Field and in the gas processing plant. He has competent attorneys knowledgeable of the issues in this case and who already have an "investment" in the remaining legal disputes in this case (in the sense of knowledge and preparedness). To make changes in this team during the short interim period prior to confirmation would cause serious disruption to the Debtors as well as significantly magnify its administrative costs and would, in this Court's opinion, only serve to delay the successful resolution of this case; all without real justification. In short, it would not be in the best interest of this estate or its creditors to make changes in the management and control over these Debtors and the remaining legal disputes for this short gap period of three or six months (less if possible).

■ Ordinarily, this Court should not be involved directly in the selection of a trustee (either in chapter 7 or chapter 11). This is the function of the U.S. Trustee's office. Bankruptcy Rule X–1005(a)(2). The Court's involvement is only in the approval of the chapter 11 trustee selected by the U.S. Trustee; except where actions of the U.S. Trustee are challenged by a party in interest under Bankruptcy Rule 9014. In this case, however, due to the unique circumstances herein, the ruling of the Court on the motion(s) to appoint a chapter 11

trustee is affected by the chapter 11 trustee selected by the U.S. Trustee. This is because of the circumstance that, here, appointment of a third party as chapter 11 trustee will be disruptive of the Debtors, their estates, their business operation and ongoing litigation that has various scheduled hearings and deadlines now pending in this Court. This is in addition to causing unnecessary expense and potential delay in the efficient closing of these cases. While the U.S. Trustee has the primary responsibility for the administration of estates this does not mean that this court must turn its back on the interests of the creditors and allow needless waste and harm to these estates. Were the U.S. Trustee to select a third party trustee or decline to appoint Gary Knostman as chapter 11 Trustee, this would cause the Court to consider that there is some hidden agenda of the U.S. Trustee's office that would bear further scrutiny and investigation. In *any* event, in this Court's opinion, for the U.S. Trustee to select a third party Chapter 11 trustee would be an abuse of the U.S. Trustee's discretion, considering the unique circumstances of these cases.

This Court is hopeful that the U.S. Trustee will agree with the wisdom of the unsecured creditors' request on this point and will appoint Gary Knostman as Chapter 11 Trustee. If he does not, the appointment of a third party trustee would defeat the purpose of the authorization for such a trustee. In such event, the Court would prefer to authorize Prentis Tomlinson to reassume control over these Debtors and to engage Gary Knostman as manager of these businesses during the interim period prior to confirmation of the creditors plan of arrangement, if he should choose to do so. Were he to choose not to do so, this Court would have to consider the possibility of invoking its authority under 11 U.S.C. § 105 to protect the interests of the creditors in these cases, if requested to do so.

Therefore, it is the conclusion of this Court that if the U.S. Trustee determines not to abide the wishes of the unsecured creditors in this case and does not appoint Gary Knostman as chapter 11 Trustee, no valid legal reason has been shown to exist why Prentis Tomlinson should not resume control of these Debtors. Therefore, the Court will authorize the appointment of a chapter 11 trustee for the above styled cases (upon their conversion to chapter 11) provided the U.S. Trustee selects Gary Knostman as the chapter 11 Trustee. If the U.S. Trustee chooses to ignore the request of the unsecured creditors and their obvious best interest and declines to approve Gary Knostman as U.S. Trustee, then, in that event, no chapter 11 trustee is authorized by this Court, as no legal basis would exist therefor and the very purpose of this authorization would be thwarted by the U.S. Trustee.

In the opinion of this Court, the foregoing constitutes sufficient and compelling reasons for the acting U.S. Trustee for this region (Region 7) to appoint Gary Knostman Chapter 11 Trustee for these cases. However, there is an additional persuasive reason for such action. That reason is the concern of this Court over certain actions in this case taken by Mr. Wesley Huisinga, the U.S. Trustee from Minnesota (now acting as U.S. Trustee for this region) and Assistant U.S. Trustee Edward Kandler from California, now acting as Assistant U.S. Trustee to Mr. Huisinga. This concern was engendered by the actions of Kandler and Huisinga in taking action in this case designed to benefit another agency of the executive branch of government to establish its disputed claim against TII.

The U.S. Trustee is part of the Department of Justice. It is not part of the judicial branch of government but rather is part of the executive branch. Nevertheless the U.S. Trustee has been given the power to supervise the *administration* of bankruptcy cases and the trustees under chapter 7, 11, and 13. The U.S. Trustee is also to supervise and oversee debtors in possession who are serving in chapter 11 cases. The purpose of the U.S. Trustee's office is to take the administrative load off of the Judiciary so that it can more effectively be a neutral adjudicator of disputes arising in and under Title 11 and those related to cases pending under Title II.

188

■ Notwithstanding that the U.S. Trustee's office is part of the Department of Justice, it is imperative to the proper disposition of bankruptcy cases and disputes connected therewith that the U.S. Trustee in each region be absolutely impartial in the selection and supervision of Trustees in the various Bankruptcy cases. If a U.S. Trustee or his representative (an assistant) endeavors to manipulate a trustee for purposes other than the best interest of the involved estate or select a trustee for such other purposes or to openly or surreptitiously attempt to maneuver a case to benefit one particular creditor or creditor group over another [even if (especially if) the favored creditor is another agency in the executive branch of government] such actions will eventually cause complete erosion of trust in the U.S. Trustee program and, indeed, in the entire bankruptcy system. Creditors in bankruptcy cases and the public in general could hardly have faith in the system when the "administrator" of the system, the one who wields power over the trustees, has a bias in favor of other governmental agencies. How can the creditors or the Bankruptcy Court itself place trust and confidence in trustees in the performance of their duties unless the U.S. Trustee (who selects these trustees and therefore holds vast power over them and their livelihood) is not only absolutely impartial but also at all times gives the appearance of absolute impartiality in the selection of trustees (especially chapter 11 trustees who do not come off of a rotating panel) and in the overall supervision of bankruptcy cases?

As noted by U.S. Bankruptcy Judge Alan Jaroslovsky in the case of *In re Don and Elizabeth Johnson*, 116 B.R. 186 (Bkcy.N.D.Calif., 1990) on page 188: "Since the U.S. Trustee has the sole power to name trustees, he has the power of economic life or death over every case trustee. A case trustee who fails to toe the U.S. Trustee's line may well find himself out of work, blackballed from being assigned any future cases."

"Moreover, the failure of the U.S. Trustee to strictly limit his role to administrative matters causes the spectre that bankruptcy cases can be controlled through the political process."

Mr. Kandler should be very familiar with this opinion and the injunction issued therein against the U.S. Trustee, as Mr. Kandler is from that particular U.S. Trustee's office.

Although Judge Jaroslovsky vacated his injunction order at a later time based upon stipulations of all parties and an undertaking by the U.S. Trustee, (see 123 B.R. 622), the comments quoted above appear to be worthy of remembrance. They should caution a U.S. Trustee against improper use of his authority or abuse of his discretion in the selection of trustees.

The April 2, 1990 Report of the Federal Courts Study Committee, Judge Joseph F. Weis, Jr., Chairman, recommended that Congress should reconstitute United States Trustees as independent statutory officers in the judicial branch. As reported, the basis for this recommendation was that the June 1989 oversight hearings on the United States Trustee Program before the House Judiciary Subcommittee on Economic and Commercial Laws revealed conflicts of interest, interference with case management efforts, improper political influence on the selection of United States Trustees and in the administration of estates, among other things, in the U.S. Trustee Program.

Here the U.S. Trustee and his assistant have openly acted in concert with the Department of Energy ("DOE") in an apparent effort to maneuver the case to (in their opinion) best assist the DOE to sustain its disputed $130,000,000 claim in the TII case. The U.S. Trustee and his attorneys conferred with the DOE attorneys about filing the motion to withdraw reference two or three weeks [1] before the U.S. Trustee filed a motion to withdraw the reference in this case. Such motion was filed May 17, 1991, the Friday before the Trustee's objections to the DOE's claim went to trial on the following Monday (May 20). The DOE joined in such motion in a separate written pleading filed the *same day* the U.S. Trust-

1. According to the DOE's attorneys.

ee's motion was filed and within hours thereafter. It could hardly be denied that these two executive agencies are acting in concert with respect to such motion.

The U.S. Trustee for whom Mr. Kandler works in California was formerly with the Federal Energy Regulatory Commission in Washington prior to becoming the U.S. Trustee for Region 17.

Indeed, the U.S. Trustee's motion and brief argue extensively that the reference should be withdrawn by the District Court in order that the Bankruptcy Court not hear the trustee's objection to the claim of the DOE. At a minimum this could have disrupted the trial setting and caused delay and additional expense to the estate. However, the real abuse by the U.S. Trustee Huisinga and his assistant Edward Kandler was to openly ally with a disputed creditor in this case. This appears to be a clear breach of the duty of the U.S. Trustee to be impartial and to always give the appearance of impartiality.

Perhaps one motivation for the effort by the U.S. Trustee was merely an overzealous effort of the U.S. Trustee's office to correct what may have appeared to them to be a seven year old *operating* chapter 7 case going nowhere. This is not the case and never has been but this particular U.S. Trustee and his assistant are new to the region and are therefore handicapped by a lack of direct knowledge of the history of and the problems encountered in this unusual and highly complex case. However, on the other hand, when this apparent open bias of the acting U.S. Trustee's office is coupled with its (almost) simultaneous request to convert the cases to chapter 11 *and* to authorize the U.S. Trustee to select a chapter 11 trustee for this case sends chills down this Court's back. The opportunity exists for a biased U.S. Trustee (or his assistant) to pre-condition a proposed chapter 11 trustee to the idea that such trustee should not vigorously oppose the disputed claim of another executive agency. Under the circumstances that exist here, the creditors and this Court would be placed in the position of not knowing whether to have complete confidence in any third party (stranger) chapter 11 trustee selected by this U.S. Trustee.

This Court doesn't quarrel with U.S. Trustee's standing or right to file a motion to withdraw reference if the U.S. Trustee truly believes that such is in the best interest of the estate. In addition, for the Department of Energy to file a motion to withdraw reference is a (semi) legitimate effort at forum shopping (although here it was *untimely*, to say the least). Let there be no mistake here, for these parties to (separately) file motions to withdraw reference is *not* the problem. The problem comes solely from the U.S. Trustee openly doing so to benefit a disputed creditor in this case. This open exhibition of bias in favor of the DOE is the use of the U.S. Trustee's power that concerns this Court here. The tension created by this misguided action would be alleviated considerably by the appointment of the chapter 11 trustee requested by the creditors. It would remove all suspicion concerning the motives of the U.S. Trustee. In addition, the conversion will be able to occur at an earlier date. This would provide an additional benefit to all interested parties.

The Attorney for the informal creditors committee is requested to prepare and present orders consistent with this opinion.